*KSC/07.29.25*



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Adeyemi O. Adenrele
Assistant United States Attorney
Adeyemi.Adenrele@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4819
MAIN: 410-209-4800
FAX: 410-962-2310

USDC- BALTIMORE
'25 AUG 6 PM 12:21

July 29, 2025

Tony Garcia, Esq.
Garcia Law
7 St Paul St
Baltimore, MD 21202

Re:   United States v. Brown, et al.
      Criminal No. JKB-24-035

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Vacshon Brown (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 1, 2025**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.   The Defendant agrees to plead guilty to Counts One, Two, and Five of the Indictment, which charges the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846, Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a), and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Count 1** – That on or about the time alleged in the Indictment, in the District of Maryland:

   a. The Defendant did knowingly, willfully, and unlawfully combine, conspire, confederate and agree with each other and with others known and unknown to knowingly, intentionally, and unlawfully distribute and possess with intent to distribute 400 grams or more of a quantity of a mixture or substance containing a

detectible amount of fentanyl, 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and 280 grams or more of a mixture or substance containing a detectable amount of cocaine base;

b. The substances were, in fact, fentanyl, cocaine, and cocaine base, all Schedule II controlled substances; and

c. The Defendant knowingly and voluntarily involved himself in the conspiracy.

**Count 2** – That on or about the time alleged in the Indictment, in the District of Maryland:

a. The Defendant knowingly, willfully, and unlawfully possessed 400 grams or more of a quantity of a mixture or substance containing a detectible amount of fentanyl, 500 grams or more of a mixture or substance containing a detectable amount of cocaine, and 280 grams or more of a mixture or substance containing a detectable amount of cocaine base;

b. The substances possessed were, in fact, fentanyl, cocaine, and cocaine base, all Schedule II controlled substances; and

c. The Defendant possessed the fentanyl, cocaine, and cocaine base with the intent to distribute them.

**Count 5** – That on or about the time alleged in the Indictment, in the District of Maryland:

a. There was a conspiracy among two or more parties, excluding undercover law enforcement officers or informants, to commit one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 or 1957; and

b. Defendant joined the conspiracy with the intent that it succeed.

<u>Penalties</u>

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. §846 | 10 years | Life | Max – Life<br>Min – 5 years | $10,000,000 | $100 |
| 2 | 21 U.S.C. § 841(a) | 10 years | Life | Max – Life<br>Min – 5 years | $10,000,000 | $100 |
| 5 | 18 U.S.C. § 1956(h) | 0 years | 20 years | 3 years | $500,000 or twice the | $100 |

2

| | | | | value of the property involved in the transaction, whichever is greater | |
|---|---|---|---|---|---|

      a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

      c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

4

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

        5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

        6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

        7.      This Office and the defendant further agree to the following applicable sentencing guideline factors:

        a.      *Count One* – This Office and the Defendant agree the applicable base offense level is **thirty-two (32)**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4), based on the fact that the offense involved a converted drug weight of at least 3,000 kilograms but less than 10,000 kilograms.

        b.      Pursuant to U.S.S.G. § 2D1.1(b)(1), there is a 2-level increase in the defendant's offense level, because the defendant possessed at least one firearm.

        c.      Pursuant to U.S.S.G. § 2D1.1(b)(12), there is a 2-level increase in the defendant's offense level, because the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

    d. Pursuant to U.S.S.G. § 3B1.1(c), there is a 2-level increase in the defendant's offense level because the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in U.S.S.G. § 3B1.1(b) or (c).

    e. *Count Two* – This Office and the Defendant agree the applicable base offense level is **thirty-two (32)**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4), based on the fact that the offense involved a converted drug weight of at least 3,000 kilograms but less than 10,000 kilograms.

    f. Pursuant to U.S.S.G. § 2D1.1(b)(1), there is a 2-level increase in the defendant's offense level, because the defendant possessed at least one firearm.

    g. Pursuant to U.S.S.G. § 2D1.1(b)(12), there is a 2-level increase in the defendant's offense level, because the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

    h. Pursuant to U.S.S.G. § 3B1.1(c), there is a 2-level increase in the defendant's offense level because the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in U.S.S.G. § 3B1.1(b) or (c).

    i. *Count Five* – Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2S1.1(a), **the base offense level is a level 32** to reflect the offense level from which the laundered funds were derived and for which the defendant would be accountable under U.S.S.G. § 1B1.3(a)(1)(A).

    j. *Grouping* – Pursuant to U.S.S.G. § 3D1.1(c), Counts One, Two, and Five will group, and pursuant to U.S.S.G. § 3D1.3(a), the offense level for the group is the highest offense level in the group, in this case is a level **thirty-eight (38)**.

    k. This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

**Accordingly, the Defendant's final offense level is thirty-five (35).**

8.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Parties Joint Recommendation to the Court

10. The parties agree to recommend a sentence of **163 months imprisonment**, which they agree is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). The parties understand that the agreement does not require the Court to impose the recommended sentence. This agreement does not affect the Court's discretion to impose any fine or to set any lawful conditions of probation or supervised release. The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific recommendation contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

11. Subject to the above provision, at the time of sentencing, this Office and the Defendant will jointly request that the Court impose a sentence of **163 months imprisonment**. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. However, the parties agree not to request as sentence of less than 163 months imprisonment or more than 163 months imprisonment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

   i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

   ii. This Office reserves the right to appeal any sentence below a statutory minimum.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

   a. a forfeiture money judgment in the amount of at least $1,179,000;

   b. a white-gold chain with diamonds and a tri-color gold money bag pendant seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

   c. a white-gold diamond heart pendant seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

   d. a platinum diamond wedding band seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

   e. a yellow-gold diamond wedding band seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  f. a stainless steel and white-gold Rolex watch seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  g. a yellow-gold Rolex watch seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  h. a stainless steel and white-gold Rolex watch seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  i. a stainless steel and yellow-gold Rolex watch seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  j. a Ruger 5.7 semi-automatic pistol bearing serial number 641-95556, and a magazine containing approximately 21 rounds of ammunition loaded therein, seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  k. a Polymer 80 semi-automatic pistol bearing no serial number, and a magazine containing approximately 10 rounds of ammunition loaded therein, seized from Vacshon Brown's residence in Abingdon, Maryland on or around July 27, 2023;

  l. a Sig-Sauer P938 9mm Luger semi-automatic pistol bearing serial number 52B293690, and a magazine containing approximately six cartridges of 9mm ammunition loaded therein, seized from Vacshon Brown's rental apartment at 201 S. Conkling St., Baltimore, MD 21224 on or around July 27, 2023;

  m. a Glock 22, .40 caliber semi-automatic pistol bearing serial number AUL877US, and a magazine containing approximately 14 rounds of .40 caliber ammunition loaded therein, seized from Vacshon Brown's property at 1709 E. 33rd Street, Baltimore, Maryland on or around July 27, 2023;

  n. a Ruger SR40c, .40 caliber semi-automatic pistol with an obliterated serial number, and a magazine containing approximately 15 rounds of .40 caliber ammunition loaded therein, seized from Vacshon Brown's property at 1709 E. 33rd Street, Baltimore, Maryland on or around July 27, 2023;

  o. approximately $200,159.82 seized from BankUnited Checking Acct. #9856119377;

  p. approximately $38,786.86 seized from Navy Federal Credit Union, N.A., Checking Account #7124979050; and

  q. approximately $56.79 seized from Navy Federal Credit Union NA, Checking Acct. #7139297910.

  15. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J),

9

32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17. The United States agrees to apply the funds seized from the Defendant's Navy Federal Credit Union NA accounts ending in x9050 and x7910 to partially satisfy his money judgment.

18. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

19. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither

the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

/s/

Adeyemi Adenrele
Alexander Levin
Assistant United States Attorneys

11

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/1/25
Date

_____
Vacshon Brown

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/1/25
Date

_____
Tony Garcia, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In May 2022, based on a tip, DEA Baltimore conducted two bulk money pick-ups totaling around $400,000. During one of those pick ups, Defendant Vacshon Brown ("Defendant" or "Brown") delivered around $100,000 to a courier who then delivered the money to a law enforcement officer acting undercover. This began DEA Baltimore's investigation into Brown. During its investigation, DEA Baltimore uncovered a drug trafficking conspiracy in which the Defendant supplied Aaron McNeil ("McNeil") with fentanyl, cocaine, and cocaine base. McNeil, Robert Stewart ("Stewart"), and others sold many of those drugs on the 600 block of North Carrollton Ave, Baltimore, MD. After significant amounts of the drug proceeds went back to Brown, he often laundered those funds through various shell company accounts and used those drug proceeds to buy properties, cars, and other luxury items.

Execution of Search Warrants

On July 27, 2023, investigators executed search warrants on numerous locations, including three locations related directly to Brown. Investigators also know that the Defendant used these locations to store drugs that eventually were distributed to McNeil, Stewart, and others to sell on the street. These locations included his primary residence, his apartment stash house at 201 South Conkling St., Apt. 8, Baltimore, MD 21224 ("Conkling House"), and his remodeled home at 33rd Street. In total, investigators seized 2,040.06 grams (2.04 kgs) of fentanyl, 1,412 grams (1.4 kgs) of cocaine, 777.7 grams of cocaine base, 9 firearms, 4 ghost guns, hundreds of rounds of ammunition, both loose and loaded in firearms or ghost guns, hundreds of grams of cut used to mix with the drugs, drug packaging and manufacturing equipment, high value jewelry, and cash. Seizures from each location are more specifically outlined below.

The Harford County SWAT executed the search warrant on Brown's primary residence and his vehicle, a silver Infiniti G35. His wife, Nakia Brown, and children were present at the time of the execution of the warrant. Upon search of the master bedroom, occupied by Brown and Nakia, from inside a black sling-style backpack, investigators seized three clear plastic baggies containing 19.47 grams of fentanyl, two clear plastic baggies containing 14.98 grams of heroin/fentanyl mix, a black digital scale, a bag of rubber bands, a shipping receipt with the Defendant's name on it, and one soft body armor plate. In other parts of the master bedroom, investigators seized various U.S. currency, Rolex watches, and items of jewelry, a small bag of assorted ammunition, and two loaded semiautomatic pistols: a Ruger 5.7 with a loaded magazine and a Polymer 80 pistol with a loaded magazine. Investigators also seized various debit and credit cards from Bank of America, NFCU, and various other financial institutions as well as NFCU bank withdrawal receipts.

Investigators also executed a search warrant on 1709 East 33rd Street, Baltimore, MD 21218 ("33rd Street"). Brown owned this property and was in the process of remodeling it for re-sale. Investigators also observed Brown park vehicles that he used in his drug trafficking at this location. At the time of the execution of the warrant, the property was unoccupied. As investigators continued their search, a closet near the master bedroom included shoe boxes, bags, clothes, and a duffle bag. In the duffle bag were various firearms and ammunition. The firearms included the following:

- Dark green Polymer80 Inc PF940C, 9mm caliber, semiautomatic pistol without a serial number, loaded with approximately one cartridge of 9mm ammunition
- Black Ruger PT738TCP, .380 caliber, loaded semi-automatic pistol (serial number 52806E);
- Black Glock 22, .40 caliber, semi-automatic pistol, loaded with approximately one cartridge of .40 caliber ammunition (serial number AUL877US);
- Black Ruger SR40c, .40 caliber, semi-automatic pistol with an obliterated serial number, loaded with approximately one cartridge of .40 caliber ammunition;
- Black Smith and Wesson M&P 45, .45 caliber, loaded semiautomatic pistol (serial number HST6669);
- Black Scott's Tactical Supply M4, .300 AAC Blackout caliber, unloaded semi-automatic AR-15 pistol equipped with a suppressor (serial number STSR00104);
- Black Maverick Arms 88, unloaded 20-gauge pump action shotgun (serial number MV0756146); and
- Black Radical Firearms LLC RF-15, 5.56x45mm caliber, unloaded semi-automatic Nato rifle equipped with a fixed flash suppressor (serial number 2-001664).

Also, in the closet was a food storage bag with various ammunition, including the following 30 12-gauge shotgun cartridges, 40 cartridges of 9mm ammunition, 41 cartridges of .40 caliber ammunition, and 20 cartridges of .223 ammunition. In the basement, there was a grey plastic tote with sneakers and a grey drawstring bag. In the drawstring bag were additional firearms, including one dark green Polymer80 PF940V2, a 9mm caliber semi-automatic pistol loaded with approximately 15 cartridges of 9mm ammunition (without a serial number); and one tan Polymer80 PF940C, 9mm caliber, loaded semi-automatic pistol (without a serial number).

Also, at 33rd Street, investigators seized various drug manufacturing equipment, including

- a silver hydraulic kilo press with the words, "Big Bastard Press" etched on the top (Exhibit N-30) in a large black trash bag;
- hydraulic jacks likely used with the hydraulic kilo press;
- four kilo plates with four different symbols on them: Apple logo, "LV" Louis Vuitton logo, 5-point crown, and one reading "ARCOS" in a box;
- narcotics packaging and processing supplies such as sifters, a respirator, scales, and a cutting agent (Manitol); and
- money counter in the lazy susan cabinet.

Lastly, investigators also executed a warrant on 201 South Conkling St., Apt. 8, Baltimore, MD ("S. Conkling"). This was another one of the Defendant's stash locations controlled and

14

accessed solely by him. At the Defendant's direction, another individual Tyra Poole, signed the lease for the apartment. For example, on May 17, 2022, Poole and the Defendant sent text messages to each other regarding renting this apartment for the Defendant. Further, going forward, Poole notified the Defendant when she would be doing a "walk through" of S. Conkling, when the rent is due, and when the gas and electricity bill must be paid. Nakia Brown works for the management company for S. Conkling and assisted the Defendant and Poole to rent it.

During the execution of the warrant, investigators seized kilogram quantities of controlled dangerous substances as well as drug packaging and processing equipment. Among other things, these included 1.4 kilograms of cocaine, nearly 1.9 kilograms of fentanyl, and 777.7 grams of cocaine base. Investigators also seized bags of quinine and diphenhydramine, often used to mix with controlled substances, at least 5 digital scales, respirators, latex gloves, protective suits, and facemasks. A firearm was also seized from S. Conkling. Specifically, a Black Sig-Sauer, Model P938, 9mm luger pistol bearing serial number 52B293690 with a fully loaded magazine and 200 rounds of 5.7 x 28mm high performance ammunition.

A laboratory tested all the substances seized from these locations and determined them to be fentanyl, cocaine, and cocaine base, Schedule II controlled substances. Further, the Defendant stipulates and agrees that the controlled dangerous substances possessed were intended for distribution and the amount of controlled dangerous substances in the conspiracy attributable to him based on his own conduct and the conduct of other co-conspirators reasonably foreseeable to him, includes at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight. The Defendant agrees that the firearms, firearm accessories, and ammunition recovered on July 27, 2023, from his primary residence and 1709 East 33rd Street were used, or intended to be used, to facilitate his drug trafficking offenses.

Money Laundering

The Defendant agrees that he used shell companies and bank accounts to deposit his drug proceeds, transfer these funds to personal and other shell business accounts or used the funds to make various vehicle, real estate and other high value purchases as well as pay debts. A number of those bank accounts for his shell companies are listed below.

| Brown Bank Account | Financial Institution | Account Number |
|---|---|---|
| A1 Trucking Global Enterprise, LLC | Navy Federal Credit Union | x7910 |
| VB Properties, LLC | Navy Federal Credit Union | x9050 (Checking) |
| Newton Holdings | Navy Federal Credit Union | x0156 (Checking) |

For example, the Defendant used his A1 Trucking account, which was tainted by drug proceeds, to make a payment to Koons Chevrolet on July 11, 2022. During the pendency of the conspiracy, the Defendant did not have any legal employment. Based on bank surveillance video and account statements, on June 30, 2022, Brown deposited $9,000 in drug proceeds into his A1

Trucking account (x7910). On the same day of that deposit, the Defendant made several transfers of funds into that same A1 Trucking account, including the following:

- $7,500 transfer from Newton Holdings (checking) into A1 Trucking (checking);
- $6,500 transfer from VB Properties LLC (checking) into A1 Trucking (checking); and
- $6,500 transfer from A1 Trucking (savings) into A1 Trucking (checking).

Then, on July 7, 2022, there are two additional cashier's check deposits into the A1 Trucking account as well as a $25,000 transfer into the account. Importantly, one of those cashier's checks was from co-defendant Aaron McNeil. McNeil deposited cash drug proceeds into his own Capitol One bank account. Then, McNeil obtained a cashier's check that was drawn on that same Capitol One bank account in the amount of $9,500. In this way, McNeil converted his drug proceeds into, what appeared to be, a legitimate cashier's check. The memo line on that cashier's check included McNeil's own first and last name. Then, the cashier's check from McNeil's Capitol One account was deposited into the Defendant's A1 Trucking account, along with the other deposits and wire transfers.

After all of these transfers and deposits of drug proceeds into the A1 Trucking account, on July 11, 2022, Brown wrote a $44,000 check to Koons Chevrolet and likely submitted it to Koons the next day. These funds went towards the $144,000 2022 Mercedes purchased by the Defendant less than two weeks prior, on June 29, 2022.

Additionally, the Defendant used drug trafficking proceeds to improve the property located at 1709 East 33rd Street, Baltimore, MD 21218, in anticipation of a sale. The sale was completed, and the proceeds of $200,159.82 were deposited in a BankUnited Checking Acct. ending in x9377.

The Defendant and his co-conspirators conducted all the above-described financial transactions knowing that the primary purpose of the transactions was to conceal the nature, location, source, ownership, or control of the proceeds from the Defendant's drug trafficking activity. All of the above-identified bank accounts and funds seized from those accounts constitute property involved in transactions or attempted money laundering transactions, or are traceable to such property.

Between January 2022 and July 27, 2023, the amount of money the Defendant laundered or attempted to launder in furtherance of the conspiracy was at least $1,179,000. The street value of cocaine is approximately $15,500 to $17,000 per kilogram and the street value of fentanyl is approximately $25,000 to $30,000 per kilogram. Based on the investigation, investigators learned that the Defendant distributed approximately 2 kilograms of fentanyl and 3 kilograms of cocaine per month. In total, the Defendant laundered at least $1,179,000 over the course of the conspiracy.

All the above-described events took place in the District of Maryland.

SO STIPULATED:

_____
Adeyemi Adenrele
Alexander Levin
Assistant United States Attorneys

_____
Vacshon Brown
Defendant

_____
Tony Garcia, Esq.
Counsel for Defendant